**TAPCO PRODUCTS COMPANY, Inc.,**
**Plaintiff,**

**v.**

**VAN MARK PRODUCTS CORPORA-**
**TION and Eugene Van Cleave,**
**Defendants.**

**Civ. No. 31627.**

United States District Court,
E. D. Michigan, S. D.

July 28, 1970.

Basil C. Foussianes, Barnes, Kisselle, Raisch & Choate, Detroit, Mich., for plaintiff; Walter O. Koch, Bodman, Longley, Bogle, Armstrong & Dahling, Detroit, Mich., of counsel.

H. Settle, Jr., Cullen, Settle, Sloman & Cantor, Detroit, Mich., for defendants.

## OPINION AND ORDER DECLARING THE PATENT–IN–SUIT TO BE INVALID

KAESS, District Judge.

This is a case involving validity and infringement of the Marsh Patent No. 3,161,223 relating to a sheet metal bending brake.

The plaintiff, Tapco Products Company, Inc., is a manufacturer of sheet metal bending brakes and is the owner of the Marsh Patent No. 3,161,223. The defendant Eugene Van Cleave was a former employee of the plaintiff; and after leaving the plaintiff's employ, Van Cleave formed Van Mark Products Corporation, which entered into the production of sheet metal bending brakes, in competition with the plaintiff.

Plaintiff sued the defendants for unfair competition and the appropriation of trade secrets in the Michigan Circuit Court in Wayne County. That suit was settled, and as a part of the settlement, license royalties were to be paid by the defendant Van Mark Products Corporation to the plaintiff Tapco. Defendants failed to comply with their royalty obligations and after some renegotiations all cooperation between the parties broke down.

Plaintiff thereupon filed the present suit, alleging patent infringement, unfair competition, and causes of action arising out of the license agreement.

The parties and the court have agreed to a postponement of trial on the remaining issues until the issue of patent infringement and validity has been determined. Therefore this opinion is restricted in scope to the issue of the patent itself.

The inventiveness relied upon by the plaintiff in support of the Marsh Patent

---

No. 3,161,223, in claims 1–6, is as follows:

> "each of said first and second members having substantially the entire length of the longitudinal edges thereof formed with longitudinally spaced intermeshing integral projections,
>
> each said projection of each said member being positioned such that all portions thereof do not extend above the plane of the surface of its corresponding member when the surfaces are substantially aligned,
>
> said projections having aligned openings therein,
>
> a hinge pin extending through said integral projections and thereby defining a hinge so that said second member may be swung relative to ·the first member for bending sheet metal about said anvil member."

And the inventiveness relied upon in claim 7 is as follows:

> "each of said first and second members having substantially the entire length of the longitudinal edges thereof formed with longitudinally spaced intermeshing integral projections,
>
> each said projection of each said member having a surface thereof lying in the plane of the flat surface of its corresponding member,
>
> said projections having aligned openings therein,
>
> and a hinge pin extending through said integral projections and thereby defining a hinge so that said second member may be swung relative to said first member to bend said metal about said anvil member."

The record discloses that plaintiff's claim of invention is based upon two improvements—(1) the use of an "integral" hinge to strengthen the bending mechanism, (2) the use of flat hinge projections not to extend above the bending surfaces in order to give additional support for a more uniform bend.

The defenses raised in opposition to the plaintiff's allegation of patent validity are (1) obviousness under 35 U.S.C. § 102, and (2) failure to claim the alleged invention in accordance with 35 U.S.C. § 112.

On the question of obviousness, the Supreme Court laid down requirements for such a determination in the case of Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), wherein Justice Clark delivering the opinion of the court states:

> "Approached in this light, the § 103 additional condition, when followed realistically, will permit a more practical test of patentability. The emphasis on non-obviousness is one of inquiry, not quality, and, as such, comports with the constitutional strictures.
>
> While the ultimate question of patent validity is one of law, Great Atlantic & Pac. Tea Co. v. Supermarket Equipment Corp., supra. (340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 [1950]) at 155, the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. See Note, Subtests of 'Nonobviousness': A Nontechnical Approach to Patent Validity, 112 U.Pa.L.Rev. 1169 (1964).
>
> This is not to say, however, that there will not be difficulties in applying the nonobviousness test. What is obvious is not a question upon which there is likely to be uniformity of thought in every given factual context. The difficulties, however, are comparable to

those encountered daily by the courts in such frames of reference as negligence and scienter, and should be amenable to a case-by-case development. We believe that strict observance of the requirements laid down here will result in that uniformity and definiteness which Congress called for in the 1952 Act.

"While we have focused attention on the appropriate standard to be applied by the courts, it must be remembered that the primary responsibility for sifting out unpatentable material lies in the Patent Office. To await litigation is—for all practical purposes—to debilitate the patent system. We have observed a notorious difference between the standards applied by the Patent Office and by the courts. While many reasons can be adduced to explain the discrepancy, one may well be the free rein often exercised by Examiners in their use of the concept of 'invention'."

In the light of the Supreme Court's ruling in *Graham*, this court finds the record in the case at bar to be adequate for determining the question of obviousness.

The prior art as manifested by the Moynihan Patent No. 2,288,013 and the Noyes Patent No. 992,038 indicates that integral hinges were known prior to the patent-in-suit and had previously been used in bending devices. The testimony of both experts, Mr. Youngdahl and Mr. Frank, unquestionably indicates to the court that integral hinges were recognized by those skilled in the art as being a stronger hinge and had been put to use previously in bending brakes. Further, the Patent Office Examiner's opinion, contained in the Marsh Patent file wrapper, indicates that the use of the integral hinge is obvious, for as he stated with reference to the integral hinge:

"* * * It is well recognized in the arts that it is obvious to make two or more separate parts integral. * *"
(Tr. 137)

Thus, this court finds the plaintiff's first alleged improvement, the employment of an integral hinge in the Marsh Patent No. 3,161,223, to be obvious to one skilled in the art at the time of the invention.

The Patent Office Examiner's opinion, however, turned on a different point as indicated by the following statement:

"* * * At the recent demonstration of the applicant's brake it was impressed upon the Examiner that the new an[d] unobvious results were obtained not solely by the use of an integral hinge but from the use of an integral hinge positioned such that its component projections did not extend above the plane of the surface of their corresponding members."

This brings us to plaintiff's second alleged inventiveness—the use of flat hinge projections not to extend above the bending surfaces in order to give additional support for a more uniform bend.

The defendants reject this alleged inventiveness on two bases: (1) it was not properly claimed in accordance with 35 U.S.C. § 112, which requires the patentee to specify his invention in the claims, Kaiser Industries Corp. v. McLouth Steel Corp., 400 F.2d 36 (6th Cir. 1968); and (2) it is not the proper subject for patent because it is not true.

As to the claims made in the Marsh Patent, there are two descriptions of the configuration or location of the hinge projections.

In Claims Nos. 1, 4, 5 and 6 it is stated that:

"* * * each said projection of each said member being positioned such that all portions do not extend above the plane of the surface of its corresponding member when the surfaces are substantially aligned,"

And in Claim No. 7 it is stated that:

"* * * each said projection of each said member having a surface face

thereof lying in the plane of the flat surface of its corresponding member,"

The defendants maintain that in Claims Nos. 1, 4, 5, and 6 the words "do not extend above the plane of the surface of its corresponding member" admit to the possibility of extending below such a plane which has been shown to be the case in prior art. Defendants further maintain that in Claim No. 7 the words "having a surface face" admit to the possibility that not *all* of the surface of the projections need lie in that same plane. This also has been shown to be the case in prior art.

Therefore, the defendant concludes that the "gapless" hinge projections theory espoused by Mr. Youngdahl's testimony is not included in the patent claims. For had they been so included, the claims would have required *all* of the surface face of the hinge projections to lie in the plane of the corresponding members.

The court sees merit in the defense proposed interpretation of the patent claims. Thus, the court questions whether the gapless hinge projection theory is covered by the claims as written. But the plaintiff's interpretation is also deserving of merit.

However the court, not wishing to become engulfed in a battle of semantics, relies most heavily upon the court room demonstration, which negates plaintiff's position. The court personally observed actual physical samples of both a prior art brake and a March patent brake. In both instances, the sheet metal was lifted away from the hinge as the metal was bent, due to the geometric characteristics of the spacing of the brake parts in relation to the metal to be bent.

Thus, the court finds plaintiff's interpretation of flat, gapless hinge projections providing additional support and producing a more uniform bend to be unsupported in fact and therefore the court finds defendants' interpretation of the claims to be the proper one.

As a result plaintiff's second allegation of inventiveness must also fall.

As to the existence of the commercial success enjoyed by Tapco, the court makes two observations. To the extent that plaintiff improved on the existing bending brakes available in their market, they showed they had a useful improvement although it was unpatentable. And, inasmuch as plaintiff produced its sheet metal brake under color of patent they were bound to meet with success, due to the absence of competition.

Therefore, the court finds the plaintiff's patent to be invalid and orders the entry upon the record in this matter No Cause of Action for Patent Infringement.